**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 15 / Chapter 11 |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R., | Case No. 22-10630 (JTD)<br>Case No. 22-10696 (JTD) |
| Putative Debtor.[1] | |

## DECLARATION OF LUIS MANUEL CAMP MÉJAN CARRER

I, Luis Manuel Camp Méjan Carrer, declare as follows:

**1.    Author and Background**

1.    I am an attorney duly admitted to practice in Mexico.  Currently, I am a Professor at the Autonomous Technological Institute of Mexico ("ITAM"), and I dedicate myself to the professional practice of law in my own office.  I am recognized as an expert in matters of bankruptcy law and laws of the financial system in Mexico.  I have a law degree from the Autonomous University of Guadalajara and a Doctorate in Law from the National Autonomous University of Mexico.  I have more than 50 years of experience in the professional practice of Law in Mexico.  My resume is attached hereto as **Exhibit A**.  Some of my experience is briefly described below.

2.    After obtaining my degrees, I started practicing law independently for four years.  Later, I joined the Legal Department of Banco Nacional de México S.A., where I remained for 30 years.  I held various positions until I became Legal Director and Deputy Secretary of the Bank and of the holding company of the financial group, reporting directly to the CEO of the Bank.  After that period, the Federal Judiciary Council appointed me, at the invitation of the President of

---

[1]    The Putative Debtor's corporate headquarters is located at Avenida Insurgentes Sur No 730, 20th Floor, Colonia Del Valle Norte, Alcadía Benito Juárez, 03103, Mexico City, Mexico.

the Supreme Court of Justice of the Nation, as General Director of the Federal Institute of Commercial Bankruptcy Specialists ("IFECOM"), which I chaired since its creation, in June 2000, until December 2009.  Later, I joined ITAM as a professor and Haynes and Boone S.C. as Of Counsel.

3.      I am a member of numerous associations related to Insolvency and Bankruptcy Law.  I was President of the International Association of Insolvency Regulators.  I am a member of the Ibero-American Institute of Bankruptcy Law, the Ibero-American Institute of Law and Finance, and the International Exchange of Experience in Insolvency.  I am also a Fellow of the American College of Bankruptcy and a Fellow of the International Insolvency Institute, of which I was a member of the Board of Directors from 2014 to 2018.  I participate in the World Bank Task Force on Insolvency and Creditor Rights and attended group sessions of work number V (Insolvency) of the United Nations Commission on International Trade Law ("UNCITRAL") as a member of the Mexican delegation.  I am a member of the National Association of Business Lawyers and the Mexican Bar Association, A.C. where I participate in the Bankruptcy Law Commission, of which I was Chairman from 2011 to 2014 and of the Commercial Law Commission, which I chaired from 2015 to 2016.

4.      I am the author of 15 books, seven of them on bankruptcy law, and multiple articles and book chapters published in works and specialized magazines in Mexico, the United States, Spain, Italy, Argentina and Uruguay.  I participated in the design and drafting of the Mexican Commercial Bankruptcy Law known as the *Ley de Concursos Mercantiles* (the "LCM") during 1999 and 2000, in the lobbying for its enactment, its actual enactment in 2000 and in its subsequent reforms of 2007 and 2014.

5.      I have the necessary knowledge and experience to prepare this report.  I am completely independent of the parties and their legal advisors.  My fees are a lump sum and do not depend in any way on the outcome of this proceeding in which I have no interest.  I have reviewed the documentation that has been provided to me and that I understand is sufficient to formulate the conclusions of this report.  I have also reviewed the applicable legislation and jurisprudence and have relied on the knowledge acquired and developed during my more than 50 years of professional experience.

6.      This declaration reflects my view of Mexican law and reflects my objective and impartial opinion of the issues analyzed.  My statements regarding Mexican law represent my view of the law as an attorney admitted and authorized to practice in Mexico.

7.      I am fluent in English and make this Declaration without the aid of a translator. Additionally, this declaration includes translations from Spanish to English.  I certify that I am fluent in both Spanish and English and the translations contained herein are true and accurate to the best of my ability.

**2.      <u>Introduction</u>**

8.      I have knowledge of proceedings under the Chapter 11 and Chapter 15 of the United States Bankruptcy Code ("<u>Chapter 15</u>"), to allow me to understand their purpose and motive (which are similar to the LCM, as both jurisdictions have adopted the Model Law on Cross-Border Insolvency cases).  My education and professional expertise pertain to Mexican law, and, for the purposes of this opinion, to the Model Law on Cross-Border Insolvency drafted by UNCITRAL and adopted by both Mexico and the United States.

9.      Since 2004, I have served as a delegate for Mexico in the biannual sessions of Working Group V Insolvency.[2]  As a result, I have served as an expert on matters connected to the application of the Model Law in several international fora.[3]  I recently penned a paper comparing the T-MEC countries' acceptance of the UNCITRAL's Cross-Border Insolvency Law, to be published by the CH. Bech Publishing House in Munich, Germany.  The publication is a commemorative volume honoring Christoph Paulus, a global leader in the field of insolvency-related thought.  The book will be named "Verbindungslinien im Recht" (German for "Connecting Lines in the Law") and is expected to be published by the end of 2022.

**3.      <u>Factual Background</u>**

10.     A shareholder of the Putative Debtor initiated a dissolution and liquidation procedure with respect to the Putative Debtor in accordance with the General Law of Business Organizations (*Ley General de Sociedades Mercantile*) (the "<u>GLBO</u>") and the Putative Debtor's Foreign Representative filed a petition before the United States Bankruptcy Court for the District of Delaware so that such procedure might be considered as a foreign main proceeding under Chapter 15 of the United States Bankruptcy Code.  The aforementioned Chapter 15 is equivalent to the Title 12 of the LCM, and both are adopted versions of the UNCITRAL's Model Law on Cross-Border Insolvency.

**4.      <u>Purpose of This Opinion</u>**

11.     I have been asked for my professional opinion on whether, according to Mexican law, the ordinary dissolution and liquidation process of a business corporation under the GLBO

---

[2]    *See* **<u>Exhibit B</u>**: Attendance to UNCITRAL's Working Group V Meetings.

[3]    *See* **<u>Exhibit C</u>**: "Program G8"

can be deemed as an insolvency proceeding for the purposes of creating a cross border insolvency proceeding as a foreign, main or non-main, proceeding in line with Title 12 of the LCM.

**5.**      **The Legal Framework of the Issue**

12.      The following legal instruments must be considered: (1) the GLBO, which governs the constitution, structure and operation of legal entities engaged in commercial activities; (2) the LCM, which is responsible for regulating the insolvency proceeding of a business entity that has failed to meet its payment commitments in a generalized way; and (3) the UNCITRAL Model Law on Cross-Border Insolvency (the "Model Law"), which has been offered to countries for incorporation into their national law, addressing the insolvency of corporations operating in many countries.  A comparison of the text of the Model Law, Chapter 15 of the United States Bankruptcy Code, and the LCM is attached hereto as **Exhibit D**.

**6.**      **The Concept of Insolvency**

13.      Although the concept of insolvency is broadly understood, it must be explained because the Mexican LCM does not use the term to refer to bankruptcy proceedings.  Insolvency refers to the condition of being unable to pay debts as they fall due or mature. Some jurisdictions use also an accounting criterion: when liabilities are greater than assets or other criteria such as the amount of the indebtedness or the percentage that liabilities represents on the assets.  The LCM recognizes that a commercial person is insolvent when it has generally failed to satisfy its obligations and adds an insolvency test: having 35 percent of its liabilities due for more than 30 days and not having enough liquid assets to meet 80 percent of the overdue obligations.  In such situation the "concurso mercantil" (*i.e.* insolvency) proceeding ("Commercial Bankruptcy") pursuant to the LCM is applicable.

**7.     A Cross-Border Insolvency Case Should Be Addressed Precisely Under the Legal Framework of Insolvency**

14.     First, it should be emphasized that the applicable regulations can be found under the umbrella term "Insolvency."   The Model Law is titled "...Cross-Border <u>Insolvency</u>," the preamble of Chapter 15 states, "[t]he purpose of this Law is to provide effective mechanisms for dealing with cases of cross-border <u>insolvency</u>," and the LCM's Twelfth Title refers to proceedings carried out in accordance with "this law" (the LCM), and Article 279 refers to "law relating to the commercial bankruptcy, or <u>insolvency</u> of the Merchant" translating verbatim the concept stated in the article 2(a) of the Model Law:

> Article 2. Definitions
>
> For the purposes of this Law:
>
> (a) "Foreign proceeding" means a collective judicial or administrative proceeding in a foreign State, including an interim proceeding, pursuant to a law relating to insolvency in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation;[4]

The Model Law, Article 2(a).

15.     The conclusion that must be drawn from this observation is that the subject matter that must be considered in an issue of the Model Law, Chapter 15, or Title 12 of the LCM, necessarily refers to insolvency procedures.   As Hon. Samuel Bufford explains: "*The opening section of chapter 15 makes it clear that the Model Law is the new method by which bankruptcy courts deal with cross border insolvency*"[5].   The same can be said in the Mexican situation.   At least for the Mexican legislation, a foreign proceeding is one that is collective and carried out in

---

[4]     The text in Spanish is: "I.          Por Procedimiento Extranjero se entenderá el procedimiento colectivo, ya sea judicial o administrativo incluido el de índole provisional, que se siga en un Estado extranjero con arreglo a una ley relativa al concurso mercantil, quiebra o insolvencia del Comerciante y en virtud del cual los bienes y negocios del Comerciante queden sujetos al control o a la supervisión del Tribunal Extranjero, a los efectos de su reorganización o liquidación;

[5]     Bufford, Samuel L. "*United States International Insolvency Law*" Oxford University Press. New York NY. 2009, P. 75.

accordance with a legislation relating to insolvency.  A regular liquidation proceeding is not and should not be considered as an insolvency proceeding.  Therefore, it is not possible to consider it as a "Main or Non-main Proceeding" for the purposes of cross border insolvency regulation.

**8.    A Collective Proceeding**

16.    The Model Law and the LCM stipulate that to be in a cross-border insolvency situation, the proceeding that must be recognized (either as the main proceeding or as a non-main proceeding) **must be a collective proceeding in addition to an insolvency proceeding**.  A collective proceeding is one in which all stakeholders, (i.e. those with an interest in the situation), are formally called and allowed to participate. [6]   A commercial company's typical liquidation procedure **is not a collective proceeding**.  In the liquidation proceeding regulated by the GLBO, creditors are not required to participate nor are they granted the rights accorded to all parties in the LCM-regulated insolvency proceeding. In bankruptcy proceedings (LCM), that is clearly a collective proceeding, creditors have numerous rights, the most important of which are mentioned below: to (a) request the commencement of the Commercial Bankruptcy (either in the ordinary way starting with a conciliation -reorganization- or in the bankruptcy-stage liquidation); (b) request the recognition of their credit or modify the manner in which it is accounted for by the debtor; (c) request that their credit be evaluated according to the corresponding ranking and priority sequence; (d) participate in the restructuring agreement negotiations with the bankruptcy conciliator and the debtor; (e) request the avoidance of the disastrous acts committed by the debtor during the insolvency's retroactive period; (f) request that the conciliator determine whether the outstanding contracts must be executed or continue in effect; (g) appoint auditors to oversee the

---

[6]    In his treatise on bankruptcy, José A. Ramrez states, *"Under the collectivity principle, all creditors are subject to the bankruptcy procedure and its conclusions."* Ramirez A. Jose. "La quiebra" (*"The Insolvency"*) Barcelona, Bosch Publisher, 1998, Volume I, page 46.

insolvency representatives, often known as "specialists" in the LCM (conciliator and liquidator); (h) use the necessary resources to challenge decisions made by the judge presiding over the proceeding; (i) participate in spillover payments based on their priority; and (j) many others provided by the LCM.

17.     Under the GLBO, which regulates the ordinary liquidation proceeding of a commercial business, **none of these rights that constitute a collective proceeding are included**. Those creditors lack a due process as they could have in an insolvency proceeding.

**9.      The Treatment of Insolvency in the LCM**

18.     The LCM establishes a single insolvency proceeding (concurso mercantil) with two subsequent phases: a conciliatory phase of mediation between creditors and the debtor (known as the conciliation stage), and a second stage of bankruptcy or liquidation. Through a restructuring agreement, the purpose of the conciliatory phase is to preserve the commercial enterprise as a continuing concern. The stated objective of bankruptcy, on the other hand, is to liquidate the business.  Before a debtor is placed in concurso mercantil through an insolvency judgment, a preliminary examination is conducted to determine whether the commencement requirements (insolvency test) have been completed.

**10.     Public Policy**

19.     In its first article, the LCM establishes that the purpose of the insolvency proceeding, which is considered a matter of public interest, is to preserve the business persons and prevent the general breach of payment obligations from jeopardizing the viability of the same and those with whom it maintains a business relationship, as well as guaranteeing adequate protection for creditors against the detriment of the assets of insolvent companies, which is deemed to be in

the public interest.[7]  This proclamation indicates a significant distinction between the LCM and

the GLBO, which does not contain such a description and leaves it primarily decisions **to the**

**partners and shareholders** to define, through the corporate bylaws, how the company runs.  This

is, matters governed by a Public Interest Law (that deems its matters as "public interest") cannot

and should not be dealt in accordance with any other legal provision that does not contain this

definition. For this reason, the situation of a general default on payments, that is, a collective

insolvency procedure, must be handled in accordance with the applicable law (LCM), **and it is**

**not possible nor legal to attempt to give a proceeding (i.e. ordinary dissolution and**

**liquidation process) that does not comply with that regulation (regulated by the GLBO) the**

**same treatment or consideration that is provided to what is the result of a procedure of public**

**interest (i.e. the proceedings regulated by the LCM)**.

11.    **The Ordinary Liquidation of a Corporation is Ruled by a General Ordinary Law**
       **(GLBO) While Insolvency has a Special Statute**

       20.    The GLBO governs the formation, organization, conduct, and operation of

commercial entities in Mexico.  This legal framework alludes to a company's natural whole life

cycle, from birth to its death.  A company that enters insolvency proceedings is in a different

situation than it would be in regular life.  Because of this, it is necessary to have a unique and

**special** law that governs the company's condition in this uncommon circumstance.  The LCM is

the law that controls the extraordinary.  The GLBO's liquidation procedure governs a standard end

to a company's existence. Article 240 governs this process, giving preference to the provisions

incorporated by the partners in the corporate bylaws of the entity and only applying the Law's

---

[7]    LCM Article 1.  "This is a public policy law aimed at regulating business reorganization."

defined procedure in the absence of such provisions.[8]  Due to a clear conflict of interest, an insolvency situation cannot be governed at the will or whim of the statutes the debtor created. As previously indicated, bankruptcy is a question of public interest and cannot be decided solely by the debtor himself (such as relying on the ordinary dissolution process), much less by private interests (or private will of partners, shareholders or members of the Board of the debtor).

21.     Liquidation is the final phase of a company's existence (and it is not, and should not be considered same as a bankruptcy of a company).  When establishing the authority of the liquidator, Article 242 of the GLBO defines what an **ordinary liquidation of the corporation entails**.  *"Giving a definition of liquidation is superfluous because the law's article 242, which discusses the liquidators' rights and obligations, provides a detailed explanation of liquidation."[9]*

22.     Important conclusions can be drawn from a careful observation of the text of Article 242 of the GLBO:

> Article 242
>
> Except for the agreement of the partners or the provisions of the social contract, the liquidators will have the following powers:
>
> I.-     to conclude any unfinished businesses and terminate the corporate operations of the company pending at the time of dissolution;
>
> II.-     to collect any and all accounts receivable and pay the accounts payable
>
> III.-     to sell the property and assets of the company;
>
> IV.-     to pay each shareholder for its interest;

---

[8]     *GLBO Artículo 240.* La liquidación se practicará con arreglo a las estipulaciones relativas del contrato social o a la resolución que tomen los socios al acordarse o reconocerse la disolución de la sociedad. A falta de dichas estipulaciones, la liquidación se practicará de conformidad con las disposiciones de este capítulo. Article 240. According to the relevant terms of the social contract or the decision made by the partners upon agreeing or recognizing the dissolution of the firm, the liquidation shall be carried out. In the absence of the aforementioned conditions, this chapter's rules will be followed while liquidating assets.

[9]     Lizardi Albarrán, Manuel. *"Estudio de la ley General de Sociedades Mercantiles"*  Editorial Porrúa. México 2010. P.341

V.- to prepare a final liquidation balance sheet of the company, which shall be submitted for the discussion and approval of the shareholders in a subsequent General Extraordinary Shareholders Meeting

When the final balance is approved, it must be recorded in the Registry and published in the Electronic System of the Mexican Ministry of Economy;

VI.- to obtain the cancellation of the company´s registration with the Registry.

The provisions of the preceding sections shall not apply when the liquidator is appointed in accordance with the procedure of article 249 Bis 1 of this Law.

23. According to such article, the liquidation procedure includes "*paying the company's debts*" and "*selling its assets*" as well as "*liquidating each partner's social assets*."  When a firm is insolvent, it is unable to pay all its debts and obtain sufficient leftover funds to liquidate the partners' social assets.  The bankruptcy laws, LCM included, control the liquidation procedure differently.  The fast-track settlement alternative that was recently added to the GLBO only reiterates the information that was previously presented.  One of the prerequisites for the aforementioned fast-track is that "***it has no monetary obligations with third parties,***" which indicates that it cannot be insolvent to use the conventional route.  Another criterion for such fast-track is that the company "*is not in commercial bankruptcy,*" which reiterates the idea that commercial bankruptcy is distinct from ordinary liquidation and that while a company in liquidation may be commence a Commercial Bankruptcy, a company in Commercial Bankruptcy must **afterwards** be liquidated in the terms established by the LCM. [10]

---

[10] GLBO Artículo 249 Bis. Las sociedades podrán llevar a cabo su disolución y liquidación conforme al procedimiento contemplado en el artículo 249 Bis 1, siempre y cuando la sociedad:

I.- Esté conformada exclusivamente por socios o accionistas que sean personas físicas;

II.- No se ubique en el supuesto contemplado en el artículo 3 de esta Ley;

III.- Hubiere publicado en el sistema electrónico establecido por la Secretaría de Economía conforme a lo dispuesto en el artículo 50 Bis del Código de Comercio y las disposiciones para su operación, el aviso de inscripción en el libro especial de los socios o registro de acciones de registro con la estructura accionaria vigente por lo menos 15 días hábiles previos a la fecha de la asamblea mediante la cual se acuerde la disolución. Para tales efectos la información contenida en el aviso de la inscripción tendrá carácter confidencial;

IV.- No se encuentre realizando operaciones, ni haya emitido facturas electrónicas durante los últimos dos años;

**12.**   **Additional Justifications Upon Comparing the LCM Requirements With the GLBO Requirements**

24.     The collective insolvency proceeding that must be considered for the application of the Model Law, is only the Twelfth Title of the LCM (equivalent to Chapter 15 of the United States Bankruptcy Code), which is governed by the LCM and contains a number of provisions that are not regulated nor contained in the ordinary liquidation procedure contemplated by the GLBO.  The ordinary liquidation procedure under the GLBO assumes that the company is being liquidated for ordinary reasons, if certain conditions are met, as opposed to the insolvency proceeding of a business, which does not necessarily include the liquidation of a business.  Whenever an insolvent company enters into a bankruptcy stage, the LCM provides rules to liquidate its assets, but not to liquidate or dissolve the debtor itself.  A liquidation and dissolution may be carried out only under the provisions of the GLBO after the bankruptcy proceeding, under the LCM, is concluded.

25.     In a Commercial Bankruptcy proceeding (concurso mercantil), there is an initial stage known as the "visit," which allows establishing whether or not a business has met the insolvency test and is, therefore, able to be declared insolvent in a Commercial Bankruptcy context.  Several insolvency professionals intervene in the Commercial Bankruptcy, assisting the Judge and the involved parties in determining the passive mass and the active mass of the insolvent debtor's estate in order to draft a reorganization agreement or to liquidate the assets and cover the

---

V.- Esté al corriente en el cumplimiento de sus obligaciones fiscales, laborales y de seguridad social;

VI.- No posea obligaciones pecuniarias con terceros;

VII.- Sus representantes legales no se encuentren sujetos a un procedimiento penal por la posible comisión de delitos fiscales o patrimoniales;

VIII.- No se encuentre en concurso mercantil, y

IX.- No sea una entidad integrante del sistema financiero, en términos de la legislación especial aplicable.

liabilities.  In a Commercial Bankruptcy, creditors and the debtor have the opportunity, with the assistance of a conciliator, to negotiate a plan for the company's survival. In fact, that is the main purpose of the Commercial Bankruptcy proceeding (concurso mercantil) as it is the main intention and rights protected by the LCM, under Article 1 (as described above).  In the Commercial Bankruptcy, the prospect of avoiding the operations that a debtor experiencing financial difficulties took prior to the insolvency judgment, so affecting the company's assets and its creditors, is established.  In a Commercial Bankruptcy, contracts in force and in a state of execution are given a controlled treatment, allowing third parties, creditors, the conciliator, and the debtor to channel the operation of the contracts for the advantage of the estate.

26.    In the event that a reorganization agreement cannot be reached, the Commercial Bankruptcy establishes, in accordance with the Absolute Priority Rule principle, the order and preference in which creditors must be paid once the remaining assets of the debtor have been realized.  Because the regular liquidation procedure is not a collective insolvency proceeding, such ranking and preference rule does not exist, leaving all creditors at the mercy of the will of the debtor, represented by the Liquidator.  This is, given that all of the aforementioned rules does not exist during a company's ordinary liquidation proceeding regulated by the GLBO, any proceeding of a company requesting that such proceeding should be recognized as a main foreign insolvency proceeding for the purposes of cross-border insolvency regulations **must be rejected**.

13.    **The Foreign Representative**

27.    A The concept of a Foreign representative is defined, according the Model Law: *"Foreign representative" means a person or body, including one appointed on an interim basis, <u>authorized in a foreign proceeding</u> to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of the foreign proceeding;" Meanwhile,*

*LCM establishes (verbatim) that "Foreign representative" means a person or body, including one appointed on an interim basis, <u>authorized in a foreign proceeding</u> to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of the foreign proceeding."*[11]  From those two texts is clearly stated that the person who should be considered as a foreign representative should be appointed as such within the insolvency proceeding.  Therefore, if the person who claims to be the foreign representative has not been appointed in a foreign insolvency proceeding (i.e. a collective and pursuant to a law relating to insolvency) should not have any qualification to request the opening of a proceeding to recognize a main foreign insolvency proceeding.

**14.    The Liquidator**

28.    IFECOM directs and administers a group of individuals able to carry out the duties of so-called "specialists" in the LCM. These individuals, who are selected, monitored, and regulated by IFECOM, will serve as inspectors, conciliators, or liquidators (receivers) in LCM-compliant insolvency processes.  This does not and should not imply, in any way, that their participation in other proceedings provides those proceedings the characteristics of a Commercial Bankruptcy as defined by the LCM.  This is, if a specialist listed and recognized by the IFECOM as a conciliator or receiver/liquidator participates in any other process (such as an ordinary liquidation governed by the GLBO) should not be considered, only for such fact, as an IFECOM-specialist and, certainly, not only for such reason the non-insolvency proceeding should be considered as an insolvency proceeding.

29.    In fact, a creditor or debtor may request the assistance of such professionals in order to reach an out-of-court settlement (Article 312 of the LCM); in the legislation and regulation of

---

[11]    LCM Article 279, IV.

electoral processes and political parties, it is stipulated that the liquidators of a political party may be selected from the IFECOM-registered specialists; and in the Law of the Institute for the Protection of Bank Savings, it is customary that the liquidators of a bank may be selected from the IFECOM register

30.     The Federal Law for the Administration and Disposal of Public Sector Assets also allows for the selection of the individuals who will carry out the administration and liquidation of various assets, and it is normal to look for such individuals among the IFECOM-registered specialists.   The preceding does not imply that the proceedings in which these individuals participate should be regarded as collective foreign insolvency procedures and governed by a law pertaining to insolvency.   In consequence, if the liquidator in a proceeding of an ordinary liquidation proceeding under GLBO is one of the individuals registered in the IFECOM that does not give to such proceeding the qualification of a foreign collective and insolvency related proceeding.

**15.     The Judicial Liquidation of Banks**

31.     According to Mexican law, there is a procedure known as "bank judicial liquidation" that applies to financial institutions. However, the nomenclature should not mislead the comprehension of this method. A Bank Judicial Liquidation is a collective bankruptcy proceeding of a bank governed by the rules of insolvency law and applicable when the competent banking authorities have revoked the bank's authorization to function as such.  This procedure is governed by the Credit Institutions Statute, which is also a law determined to be of public interest and ensures the financial system's health. Notably, this law also includes an ordinary liquidation procedure comparable to the GLBO method for banks.

**16.** **UNCITRAL's Model Law on Recognition and Enforcement of Insolvency-Related Judgments**

32.     The United Nations Commission for International Trade Law adopted the *Model Law on Recognition and Enforcement of Insolvency-Related Judgments* in 2018 to, among other things, complement the current Model Law on Cross-Border Insolvency, and: "To ensure timely and cost-effective recognition and enforcement of insolvency related judgments;" and **"**where legislation based on the UNCITRAL Model Law on Cross-Border Insolvency has been enacted, to complement that legislation" (which is the case of both the USA and Mexico).[12]  This model legislation has not been enacted by Mexico or the United States, although it defines the same concepts as the Cross-Border Insolvency Model Law:

> Article 2. Definitions
> For the purposes of this Law:
> (a) "Insolvency proceeding" means a collective judicial or administrative proceeding, including an interim proceeding, pursuant to a law relating to insolvency in which proceeding the assets and affairs of a debtor are or were subject to control or supervision by a court or other competent authority for the purpose of reorganization or liquidation;
> Model Law on Recognition and Enforcement of Insolvency-Related Judgments Article 2(a)

33.     This strengthens the author's criterion that in order to evaluate a sentence made in a foreign proceeding in a case relating to the insolvency of a debtor, the proceeding must have the features of being collective and originating from a legal regime relevant to insolvency

**17.** **Conclusions**

34.     A company that has commenced an ordinary liquidation proceeding in accordance with the GLBO may be subject to a concurso mercantil proceeding, but it is not possible to convert a concurso mercantil into an ordinary liquidation proceeding, **nor it is possible to consider an ordinary liquidation proceeding as a proceeding that can be subject to the application of**

---

[12]     https://uncitral.un.org/sites/uncitral.un.org/files/media-documents/uncitral/en/ml_recognition_gte_e.pdf

**Uncitral's Model Law for Cross-Border Insolvency and the Title Twelve of the Ley de Concursos Mercantiles**.  In order to recognize a foreign proceeding (main or non-main) in an insolvency case, the proceeding must be a collective one subject to an insolvency-related statute. The proceeding arising from the GLBO cannot be considered either a collective proceeding or the result of an insolvency proceeding.  The person requesting to be considered a "foreign representative" has no qualification as such as he has not been appointed within a foreign proceeding (a collective proceeding according to a law relating to insolvency.  The fact that the liquidator in one proceeding according to the ordinary liquidation proceeding under GLBO is one of the individuals registered before the IFECOM does not give to such proceeding the qualification of a foreign collective and insolvency related proceeding.  The GLBO and the LCM are two very distinct laws that handle two very different situations and purposes.

35.    Accordingly, based on my more than 50 years of study and understanding of Mexican law, and my deep knowledge of insolvency proceedings, I conclude that any petition to recognize an ordinary dissolution and liquidation case as a main (or non-main) foreign insolvency proceeding should be denied and rejected; otherwise, all stakeholders would be severely affected as they are not provided with sufficient scope of rights to participate under such proceeding, as opposed to the rights protected by any insolvency law, such as the LCM which indeed regulates an insolvency proceeding (concurso mercantil) in Mexico, pursuant to Mexican law, situation that does not occur in an ordinary dissolution and liquidation proceeding, regulated by the GLBO.

* * *

17

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of August, 2022
in Mexico City, Mexico


_____
Luis Manuel Camp Méjan Carrer